FILED

2006 Jan-24  AM 11:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| **PRESTON AVERITTE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **1:05-CV-1088-VEH** |
| **MONUMENTAL LIFE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Preston Averitte has brought this action against Defendant Monumental Life Insurance Company for breach of contract and bad faith refusal to pay an insurance claim. Plaintiff's claim arises from Defendant's failure to pay disability insurance benefits to Plaintiff in accordance with Plaintiff's disability insurance policy with Defendant.

Defendant has filed a motion for summary judgment on both of Plaintiff's claims. Defendant has submitted a brief in support of its motion for summary judgment. Plaintiff has not responded to Defendant's motion. The court has reviewed the evidence submitted by Defendant in considering the merits of the motion.

1

For the reasons explained, Defendant's motion for summary judgment is due to be **GRANTED.**

## I.    FACTUAL HISTORY

Plaintiff Preston Averitte began employment with Tyson Foods, Inc., on December 17, 2003. (Defendant's Notice of Evidentiary Filing, Exh. A-3). Prior to January 1, 2004, Plaintiff held a disability insurance policy with American Bankers Insurance Company, which he acquired through his mortgage lender. (Compl. pg. 1, ¶ 6, Preston Aff. pg. 1).

On January 1, 2004, this policy was assumed by Defendant Monumental Life Insurance Company from American Bankers. (Compl. pg. 1, ¶ 6, Preston Aff. pg. 1). The terms of this policy held that Plaintiff's coverage would automatically terminate if Plaintiff ceased to be employed full-time. (Defendant's Notice of Evidentiary Filing, Exh. A-1, pg. 4).

Plaintiff's employment with Tyson Foods, Inc., ended on February 11, 2004. (Defendant's Notice of Evidentiary Filing, Exh. A-4). His employment was formally terminated on February 16, 2004. (Defendant's Notice of Evidentiary Filing, Exh. A-3).

On March 2, 2004, Plaintiff sustained an injury to his eyes during a fishing accident. (Compl. at ¶ 3, Preston Aff. pg. 1). Plaintiff alleges that, after casting out

2

his fishing line, the hook became lodged beneath the surface of the water, compelling Plaintiff to pull the line until it was dislodged. (Preston Aff. pg. 1). After pulling the line with some effort, the hook became dislodged and swung backward into Plaintiff's face. (Preston Aff. pg. 1). The lead weight on the hook struck Plaintiff's eyes, causing an injury that required immediate medical attention, emergency surgery, and hospitalization. (Preston Aff. pg. 1).

In consequence of this injury, Plaintiff alleges that he is blind and unable to work. (Preston Aff. pg. 1, Defendant's Notice of Evidentiary Filing, Exh. A-2). Plaintiff also claims that his physician recommends two more surgeries to attempt to repair Plaintiff's vision. (Preston Aff. pg. 1).

Plaintiff filed a claim of benefits form with Defendant on March 26, 2004, pursuant to his insurance policy with Defendant. (Defendant's Notice of Evidentiary Filing, Exh. A-2). While Plaintiff's claim was pending, Defendant obtained a Verification of Employment form from Tyson Foods, Inc., which indicated that Plaintiff's employment with Tyson Foods had been terminated on February 16, 2004. (Defendant's Notice of Evidentiary Filing, Exh. A-3). Defendant also obtained a letter from Plaintiff's counsel dated June 4, 2004, indicating that Plaintiff's last day of work had been February 11, 2004, twenty days prior to Plaintiff's injury. (Nurse Aff. at ¶ 7, Defendant's Notice of Evidentiary Filing, Exh. A-3, A-4). Based on this

information, Defendant communicated its denial of benefits to Plaintiff's counsel on June 17, 2004.  (Nurse Aff. at ¶ 8).

## II.    PROCEDURAL HISTORY

Plaintiff filed a complaint with the Circuit Court of Calhoun County on August 23, 2004.  (Compl., ¶¶ 14-15, Preston Aff., pg. 1).  The Circuit Court of Calhoun County entered a default judgment for Plaintiff on February 3, 2005.  (Defendant's Notice of Evidentiary Filing, Exh. A-6).  Defendant later claimed that it did not obtain notice of the lawsuit until it received correspondence dated April 18, 2005 from Plaintiff's counsel regarding the judgment.  (Nurse Aff. at ¶ 9).

The action was removed to this court on June 6, 2005, on the bases of diversity of citizenship between the parties and the amount in controversy, which exceeds $75,000, pursuant to 28 U.S.C. § 1332(a)[1].  (Doct. 1).  On September 7, 2005, this courted granted Defendant's Motion for Relief from the Judgment of the Circuit Court of Calhoun County.  (Doct. 10).  Defendant filed an Answer to Plaintiff's Complaint on September 30, 2005.  (Doct. 11).

On October 20, 2005, Defendant filed a Motion for Summary Judgment with an accompanying Brief in Support of Its Motion for Summary Judgment and its

---

[1]Plaintiff is a citizen of Alabama.  (Compl. at ¶ 1).  Defendant is a corporation organized under the laws of the State of Maryland.  (Defendant's Notice of Removal, ¶ 7).

4

Notice of Evidentiary Filing with attached exhibits.  (Docts. 12-14).  Plaintiff has not

submitted a brief or any other materials in opposition to Defendant's Motion for

Summary Judgment.

On November 17, 2005, Defendant filed a Motion for Ruling on its Pending

Motion for Summary Judgment.  (Doct. 15).  On November 18, 2005, this court

granted the motion to the extent that it would examine the pending motion for

summary judgment. (Doct. 16).  This court denied Defendant's motion to the extent

that it sought a ruling on the motion based on Plaintiff's failure to oppose summary

judgment.  (Doct. 16).  This court has instead considered the merits of Defendant's

motion for summary judgment, including a review of the evidence submitted in

support of Defendant's motion and the record in its entirety.

## III.   SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law."  See *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023

(11th Cir. 2000).  The party asking for summary judgment always bears the initial

responsibility of informing the court of the basis for its motion, and identifying those

portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(c) requires the nonmoving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See *Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the

burden of proof at trial, then it can meet its burden on summary judgment only by presenting positive evidence that demonstrates the absence of a genuine issue of material fact; i.e., facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for a directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of any evidence in the record in support of a judgment for the nonmoving party on the issue in question. This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the nonmoving

party's case. *Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the nonmoving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

The nonmovant has not opposed the motion for summary judgment in the instant action.  However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004), citing *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988) (per curiam).  See also *Hibernia Nat'l Bank v. Administracion Central Sociedad Anonima*, 776 F.3d 1277, 1279 (5th Cir. 1985) ("a motion for summary judgment cannot be granted simply because there is no opposition . . . ."), citing *John v. La. (Bd. of Trustees for State Colleges & Universities)*, 757 F.2d 698, 709 (5th Cir. 1985).  "[T]he district court's order granting

8

summary judgment must 'indicate that the merits of the motion were addressed.'"
*One Piece of Real Property*, 363 F.3d at 1102, quoting *Dunlap*, 858 F.2d at 632.

While this court is not required to examine every item of evidence before it
when considering a motion for summary judgment, it must make certain that the
motion is "supported by evidentiary materials." *One Piece of Real Property*, 363
F.3d at 1101. At the least, this court must consider all the evidence submitted by the
movant in support of its motion. *Id.*, citing *Jeroma v. Massey*, 873 F.2d 17, 20 (1st
Cir. 1989) (per curiam) (". . . the district court must review the motion and the
supporting papers to determine whether they establish the absence of a genuine issue
of material fact.").

The movant must demonstrate an absence of a genuine issue of material fact;
if the movant fails to meet his burden, this court may deny the motion, without regard
to whether the nonmovant has filed a response. *Hibernia Nat'l Bank*, 776 F.3d at
1279, citing *John*, 757 F.2d at 708.

However, if the nonmovant has not supplied the court with a response to
dispute any issue of fact, this court may receive the movant's factual account as "a
prima facie showing of its entitlement to judgment." *Eversley v. Mbank Dallas*, 843
F.2d 172, 174 (5th Cir. 1988), citing *Matsushita Electrical Industrial Co. v. Zenith
Radio Corp.*, 475 U.S. 574, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986); *Anderson v.*

9

*Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV.   ANALYSIS

**A.    Defendant did not breach its contract with Plaintiff because Defendant's obligations to Plaintiff under the contract had terminated prior to Plaintiff's injury.**

Plaintiff alleges that Defendant breached the insurance policy by failing to pay

benefits to Plaintiff after his injury.  (Compl. at ¶¶ 10-14).

In the ordinary breach of contract action, the claimant must prove: (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages.

*Southern Med. Health Sys., Inc. v. Vaughn*, 669 So.2d 98, 99 (Ala. 1995).

**1.    Defendant's obligations to Plaintiff terminated prior to Plaintiff's injury because Plaintiff had failed to remain employed full-time as required for the policy to remain in effect.**

Defendant is entitled to summary judgment on Plaintiff's breach of contract

claim because Plaintiff has failed to prove that a valid and binding agreement existed

between himself and Defendant *at the time of his injury* as required by the policy.

(Defendant's Notice of Evidentiary Filing, Exh. A-1, pg. 2).

Defendant claims that it has not breached the policy because the policy had

been terminated prior to Plaintiff's injury.  (Defendant's Memorandum in Support of

its Motion for Summary Judgment, pg. 6). The policy specifically requires that "[t]he injury must occur while insurance is in force" under the policy. (Defendant's Notice of Evidentiary Filing, Exh. A-1, pg. 2). Hence, Plaintiff's injury must have occurred while the policy was still in effect to entitle him to benefits.

Whether the policy was in effect when Plaintiff was injured appears to turn on Plaintiff's employment status on the date of his injury. The policy requires that Plaintiff remain employed full-time as a condition of continuing coverage: "[a]n insured's coverage automatically ends on the first of the following dates: . . . (f) the date the Insured ceases to be Employed Full-Time. . . ." (Defendant's Notice of Evidentiary Filing, Exh. A-1).

Plaintiff does not dispute that he was not employed full-time when he was injured on March 2, 2004. (Defendant's Notice of Evidentiary Filing, Exh. A-4). Although Plaintiff stated on his claim of benefits form to Defendant that he had ceased to work due to his disability on March 2, 2004, other substantial evidence–including Plaintiff's own admission–points to the conclusion that Plaintiff ceased to be employed full-time on February 11, 2004. (Defendant's Notice of Evidentiary Filing, Exhs. A-2, A-3, A-4). Plaintiff's counsel has further explained that Plaintiff voluntarily terminated his employment with Tyson Foods, Inc., on February 11, 2004, to pursue other job opportunities that subsequently fell through.

11

(Defendant's Notice of Evidentiary Filing, Exhs. A-1, A-4). Plaintiff does not claim that he had obtained other full-time employment after he left Tyson Foods; it is unclear whether, on the date of Plaintiff's injury, Plaintiff was unemployed or employed part-time.

Rather than dispute that he was not employed full-time when he was injured, Plaintiff has indicated that he does not believe his employment status should have any bearing on the continuance of coverage under the policy. (Defendant's Notice of Evidentiary Filing, Exh. A-4). Plaintiff apparently believes that the policy should have stayed in effect when he was injured because he has remained current on his mortgage payments. (Defendant's Notice of Evidentiary Filing, Exh. A-4).

The policy does state that it will automatically terminate in the event Plaintiff's mortgage is foreclosed. (Defendant's Notice of Evidentiary Filing, Exh. A-1, pg. 4). However, Plaintiff's remaining current on his mortgage loan is only one of several conditions of the policy's continuing coverage. (Defendant's Notice of Evidentiary Filing, Exh. A-1, pg. 4). As previously noted, Plaintiff's continuing full-time employment is another such condition. (Defendant's Notice of Evidentiary Filing, Exh. A-1). These conditions are listed in the disjunctive, indicating that the breach of any one of them will trigger the automatic termination of coverage. (Defendant's Notice of Evidentiary Filing, Exh. A-1). Thus, Plaintiff may have remained current

on his mortgage payments as required by the policy, but the record is clear that he was not employed full-time on the date of his injury as the policy also requires. (Defendant's Notice of Evidentiary Filing, Exh. A-1).

The record shows that, due to Plaintiff's lack of full-time employment, the policy terminated twenty days prior to Plaintiff's injury.  (Defendant's Notice of Evidentiary Filing, Exhs. A-2, A-3, A-4).  Defendant was therefore under no obligation to Plaintiff under the policy as of the date of his injury.  (Defendant's Notice of Evidentiary Filing, Exh. A-1).

   **2.    Because the insurance policy was no longer valid when Plaintiff was injured, Defendant has not breached its contract with Plaintiff.**

Because Plaintiff has not shown that a valid and binding contract was in effect at the time of his injury, he has failed to demonstrate that Defendant was obligated to pay him benefits under the contract.  *Southern Med. Health Sys., Inc. v. Vaughn*, 669 So.2d at 99.  As previously discussed, the record is clear that Defendant's obligations to Plaintiff terminated prior to his injury; consequently, Defendant's refusal to pay Plaintiff disability benefits under the policy does not constitute a breach of that policy.

The record demonstrates the absence of any material fact relevant to this claim; Defendant is therefore entitled to summary judgment on Plaintiff's breach of contract

claim.

**B.    Defendant's failure to pay benefits to Plaintiff does not constitute a bad faith refusal to pay an insurance claim.**

Plaintiff claims that Defendant's failure to pay Plaintiff disability benefits constitutes a bad faith refusal to pay an insurance claim. (Compl., ¶ 25). In support of his claim, Plaintiff alleges that Defendant intentionally failed to determine whether there was any lawful basis for its refusal. (Compl., ¶ 24). Plaintiff further alleges that Defendant denied benefits though it lacked any legitimate, arguable, or debatable reason for its denial. (Compl., ¶ 22).

When considering a claim for bad faith refusal to pay insurance benefits, the Alabama Supreme Court has held that "[a]n insurer is liable for its refusal to pay a direct claim when there is *no lawful basis* for the refusal coupled with actual knowledge of that fact." *National Security Fire & Cas. Co. v. Bowen*, 417 So.2d 179, 183 (Ala. 1982), citing *Chavers v. National Security Fire & Cas. Co.*, 405 So.2d 1 (Ala. 1981) (emphasis added). "No lawful basis 'means that the insurer lacks *a legitimate or arguable reason* for failing to pay the claim.'" *Bowen*, 417 So.2d at 183, quoting *Gulf Atlantic Life Ins. Co. v. Barnes*, 405 So.2d 916, 924 (Ala. 1981) (emphasis added).

"The plaintiff in a 'bad faith refusal' case has the burden of proving:

(a)    "an insurance contract between the parties and a breach thereof by the defendant;

(b)    "an intentional refusal to pay the insured's claim;

(c)    "the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);

(d)    "the insurer's actual knowledge of the absence of any legitimate or arguable reason;

(e)    "if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim."

*National Ins. Ass'n v. Sockwell*, 829 So.2d 111, 127 (Ala. 2002), quoting *Bowen*, 417

So.2d at 183.

> "In short, plaintiff must go beyond a mere showing of nonpayment and prove a *bad faith* nonpayment, a nonpayment without any reasonable ground for dispute.  Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.'"

*National Ins. Ass'n v. Sockwell*, 829 So.2d 111, 127 (Ala. 2002), quoting *Bowen*, 417

So.2d at 183 (emphasis in original).

**1.    Defendant's failure to pay insurance benefits does not constitute a bad faith refusal because Plaintiff has not satisfied his burden of proving that Defendant has breached its contract with Plaintiff.**

Defendant is also entitled to summary judgment on Plaintiff's bad faith refusal

claim because Plaintiff has failed to satisfy the first element of his claim.  Plaintiff has

not shown the existence of "an insurance contract between the parties and a breach

thereof by the defendant."  *Sockwell*, 829 So.2d at 127, citing *Bowen*, 417 So.2d at

183.

In stating the necessity of a valid claim for breach of contract to a successful bad faith refusal claim, the Alabama Supreme Court has held that

> [i]n the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law.

*National Sav. Life Ins. Co. v. Dutton*, 419 So.2d 1357, 1362 (Ala. 1982).

As discussed in the analysis regarding Plaintiff's breach of contract claim, Plaintiff has not shown that a valid and binding contract existed between the parties at the time of his injury.  Defendant could not have breached the policy because it was no longer in effect at that time.  (Defendant's Notice of Evidentiary Filing, Exhs. A-1, A-2, A-3, A-4).  For Plaintiff's bad faith refusal claim to succeed, he must show that Defendant has breached the insurance policy; because he has not met this burden, he cannot satisfy the first element of a successful bad faith refusal claim.  *Sockwell*, 829 So.2d at 127.

**2.    Defendant's failure to pay insurance benefits does not constitute a bad faith refusal because Plaintiff has not shown that Defendant had no reasonably legitimate or arguable reason for its refusal.**

Defendant is further entitled to summary judgment on Plaintiff's bad faith refusal claim because Plaintiff has failed to meet the third element of his claim, "the

absence of any reasonably legitimate or arguable reason for [its] refusal." *Sockwell*, 829 So.2d at 127.

The Alabama Supreme Court has stated that "if a lawful basis for denial [of insurance benefits] actually exists, the insurer, as a matter of law, cannot be held liable in an action based upon the tort of bad faith." *Sockwell*, 829 So.2d at 127.

The record is clear that Defendant had "a lawful basis" for its refusal to pay Plaintiff insurance benefits. *Id.* (Defendant's Notice of Evidentiary Filing, Exhs. A-1, A-2, A-3, A-4). As discussed previously, the insurance policy specifically required that Plaintiff continue full-time employment for coverage to remain in effect. (Defendant's Notice of Evidentiary Filing, Exh. A-1). Because Plaintiff ceased to be employed full-time on February 11, 2004–twenty days prior to his injury–the policy terminated before Plaintiff was injured.[2] (Defendant's Notice of Evidentiary Filing, Exhs. A-1, A-2, A-3, A-4). Defendant therefore had "a lawful basis" for refusing to pay benefits to Plaintiff for his injury, negating Plaintiff's allegation that Defendant lacked any "reasonably legitimate or arguable reason" for its denial. *Sockwell*, 829 So.2d at 127.

Plaintiff's claim of bad faith refusal must fail because he has not shown that

---

[2] As discussed previously, to entitle Plaintiff to benefits, the policy requires that Plaintiff's injury occur while the policy is in effect to entitle Plaintiff to benefits. (Defendant's Notice of Evidentiary Filing, Exh. A-1, pg. 2).

Defendant lacked any "reasonably legitimate or arguable reason" to refuse to pay benefits on his claim, and cannot satisfy the necessary third element of a successful bad faith refusal claim.

## V.   CONCLUSION

Defendant is entitled to summary judgment on Plaintiff's claims of breach of contract and bad faith refusal to pay insurance benefits.   Plaintiff has not demonstrated that a valid contract existed between himself and Defendant at the time of his injury as required for both a successful breach of contract claim and a claim of bad faith refusal to pay insurance benefits.   *Southern Med. Health Sys., Inc. v. Vaughn*, 669 So.2d 98, 99 (Ala. 1995).   Plaintiff has also failed to show that Defendant lacked "a lawful basis" for its denial of insurance benefits as he must to succeed in his bad faith refusal claim.

This court is mindful of the Plaintiff's loss due to his injury; however, after reviewing the evidence submitted by the defendant and the record in its entirety, and after considering the merits of Plaintiff's claim and Defendant's motion for summary judgment, the record does not show the existence of any genuine issue of material fact and, consequently, Plaintiff's claims cannot survive summary judgment.

Based on the foregoing, this court finds that Defendant Monumental Life Insurance Company's motion for summary judgment is due to be **GRANTED**.   A

separate Order will be entered.

       **DONE** and **ORDERED** this 24th day of January, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge